THE CITY OF MIAMI, Plaintiff in Error, v. BETTY Mc-CORKLE, a minor, joined by her next friend, PAUL BROWN, Defendant in Error.

199 So. 575
Division A
Opinion Filed November 22, 1940

*Lewis Twyman,* for Plaintiff in Error;

*Blackwell & Walker,* for Defendant in Error.

BUFORD, J.—On writ of error we review judgment in favor of the plaintiff rendered in a suit for damages resulting from a collision between a hook and ladder truck of the defendant municipality and an automobile in which plaintiff was riding.

Plaintiff in error presents four questions for our consideration, as follows:

"First Question:

"Even though the declaration charges a municipality with 'a persistent habit and habitual custom' of being negligent in the operation of fire-fighting equipment, is the munici-

pality liable when the evidence offered at the trial relates only to a single time and place involving alleged negligence by the driver of a hook and ladder truck proceeding to a reported fire, and refers in no way to prior habit, custom or nuisance?"

"Second Question:

"In addition to compensatory damages for alleged negligence, is a municipality in Florida liable to the assessment of punitive or exemplary damages?"

"Third Question:

"When the plaintiff, a minor, claims permanent physical and mental injury, but at the trial offers no medical evidence of her present condition, and relies upon the hospital record of her injury fifteen months theretofore and upon testimony concerning her condition at that time, and upon hypothetical questions based thereon involving her probable future condition, is there sufficient certainty in the evidence to support a verdict for permanent injury, particularly when the chief expert medical witness for the plaintiff testified at the trial 'Most likely this girl will recover. I just stated these other things can occur'?"

"Fourth Question:

"Can photographs of a badly wrecked automobile be identified and sufficiently qualified for admission in evidence when the witness who produces and attempts to qualify them did not take them, was not present when they were taken, testifies, 'I wouldn't have any idea who took them,' does not know when they were taken, saw them for the first time more than a year after the wreck, and admits that the automobile had been moved from the scene of the wreck to a junk yard and that the hood at least had been removed, but stubbornly insists nevertheless that the pictures are 'true representation of the condition of the car'?"

The declaration was in two counts. In the first count it is alleged, *inter alia:*

"And the plaintiff says that the motor vehicle hereinabove mentioned had for a long period of time, to-wit for many months before the date alleged above, been used as a vehicle for the purpose of transporting members of the defendant's fire department to the scene of fires, and that for a long period of time it had been the persistent habit and habitual custom of those operating and driving said motor vehicle and fire fighting apparatus to drive the same at a high and dangerous and grossly negligent rate of speed, into and through street intersections where traffic control signal lights were maintained and operated by the said City of Miami, while said traffic control signal lights were red for traffic moving in the direction in which said vehicles were going, many times driving the said apparatus through such intersections at a high and dangerous rate of speed, without regard for the rules and regulations for the control of traffic therein, and the plaintiff avers that the said custom and habit of driving through such intersections at such high and dangerous rates of speed, and against red signal lights was generally and well known, and was so patently and obviously dangerous to other persons using the said streets of said city and proceeding in accordance with the ordinance controlling the use of such intersections as to be a menace to the public and to constitute a nuisance; and the plaintiff avers that the driving of the said motor vehicle as aforesaid was known, or by the exercise of reasonable diligence could have been known." . . .

The second count does not contain this allegation setting up "persistent habit and habitual custom."

The case went to trial on pleas of not guilty to both counts of the declaration. The verdict was a general verdict

and did not specify that it was based on either particular count of the declaration.

The evidence amply supported the second count of the declaration. Therefore, it is unnecessary to discuss the contention presented by the first question. .

It is settled in this jurisdiction that a judgment will not be reversed where it is based on a general verdict and the declaration contains a good count. Section 2814 R. G. S., 4501 C. G. L., provides that no judgment after verdict shall be reversed for any faulty count in the declaration where the declaration contains one good count. See Ferry Pass Shippers & Inspectors Assn. v. Pensacola Lbr. Co., 65 Fla. 313, 61 Sou. 639; Maxwell v. City of Miami, 87 Fla. 107, 100 Sou. 147, 33 A. L. R. 682.

The second question challenges the propriety of the charge of the court in which the court instructed the jury in effect that it might include in the verdict such sum as might be warranted by the evidence as punitive or exemplary damages. While we have never heretofore been called upon to determine in terms whether or not a municipality in a case of this sort is liable for punitive or exemplary damages, the rationale of our opinions in the case of Kaufman v. City of Tallahassee; Maxwell v. City of Miami and City of Tallahassee v. Kaufman, citations of which will appear hereinafter, leads us to the conclusion that when the officers or employees of a municipality in disregard of the rights of the public so negligently and carelessly operate automotive-driven fire fighting apparatus on the public streets as to endanger persons lawfully traveling upon the streets, that the municipality will be held to the same degree of liability as would an individual committing the same wrong and injury.

In the instant case, however, there is no indication in the

verdict that any sum was assessed for punitive or exemplary damages. The verdict of $5,000.00 was meager for compensatory damages in this case.

The third question challenges the sufficiency of the evidence to support the verdict and the allegations of the declaration. We have considered the evidence and found it to be ample.

The fourth question challenges the propriety of the introduction in evidence of some photographs. We think that under the showing made the photographs referred to in the fourth question were admissible under the rule stated in Ortiz v. State, 30 Fla. 256, 11 Sou. 611, where it was held:

"A photograph or other picture proved to be a correct representation of physical objects as to which testimony is adduced, is admissible in evidence for the use of witnesses in explaining their testimony, and thereby enabling the jury to understand the case more perfectly; but whether or not a photograph which has been offered for such auxiliary purpose has been proved to be a true representation, is a question to be decided primarily by the trial judge, and his decision of it will not be reversed when it is not shown that he has erred; and certainly not where it is clear that the admission of a photograph which he has excluded, would have served than of assistance, to the jury."

Plaintiff in error contends that the City could not be held liable in damages for a single act of negligence causing damage because, as it is contended, this act occurred in connection with the performance of a governmental function. That a plaintiff may recover in a case of this sort is too well settled to admit of question. See Kaufman v. City of Tallahassee, 84 Fla. 634, 94 Sou. 697, 30 A. L. R. 741; Maxwell v. City of Miami, 87 Fla. 107, 100 Sou. 147, 33 A. L. R. 682; City of Tallahassee v. Kaufman, 87 Fla. 119, 100 Sou. 150.

On inspection of the entire record we fail to find reversible error. Therefore, the judgment is affirmed.

So ordered.

TERRELL, C. J., WHITFIELD, CHAPMAN and THOMAS, J. J., concur.

Justice BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

### ON PETITION FOR REHEARING

On petition for rehearing it is contended that we inferentially held the second count of the declaration insufficient because it did not allege the existence of "persistent habit and habitual custom." Such was not and is not our conclusion. We do not construe our opinions in either the Kaufman case, 84 Fla. 634, 94 Sou. 697, or the Maxwell case, 81 Fla. 107, 100 Sou. 147, to hold the allegation of the existence of "persistent habit and habitual custom" necessary to the sufficiency of a declaration in such a case as is here presented.

If the allegations of the declaration in such cases are sufficient to show actionable carelessness and negligence on the part of the City's agents and servants in the driving of fire apparatus on the public streets in disregard of the public lawfully using the street and that such actionable carelessness and negligence resulted directly in injury to one so using the street, it is not necessary to allege or prove "persistent habit or habitual custom." See City of Tampa v. Easton, opinion filed November 26, 1940.

In such cases "persistent habit or habitual custom" may be alleged and proved as a circumstance to show the probability of the unlawful commission of the careless and negligent act complained of.

Petition for rehearing denied.

So ordered.

WHITFIELD, TERRELL, BUFORD, CHAPMAN and THOMAS, J. J., concur.

Chief Justice BROWN and Justice ADAMS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.