160 So.2d 57 (1964)
Thomas E. FISHER, Appellant,
v.
The CITY OF MIAMI, a municipal corporation, Thomas Marshall, and William Jackson, Appellees.
No. 63-189.
District Court of Appeal of Florida. Third District.
January 28, 1964.
Rehearing Denied February 13, 1964.
*58 Frates, Fay & Floyd and Kermit G. Kindred, Miami, for appellant.
John R. Barrett, City Atty., and John S. Lloyd, Asst. City Atty., for City of Miami.
William Jackson, Donald Wheeler Jones, for Thomas Marshall.
Before CARROLL, TILLMAN PEARSON and HENDRY, JJ.
TILLMAN PEARSON, Judge.
The point upon appeal which we will discuss is the liability of a municipal corporation for punitive damages. This question arose in an action for personal injuries claimed as the result of acts which a jury may find to have been an intentional and willful beating of the plaintiff as an incident of his arrest by a police officer of the City of Miami.
A brief history of the case is necessary to our decision. The complaint alleged facts sufficient to state the cause of action and claimed both compensatory and punitive damages. The City's motion to strike the prayer for punitive damages was granted. Thereafter, the court entered a summary final judgment for the City. This judgment was based upon the pleadings and plaintiff's testimony on deposition that the injuries were intentionally inflicted.
It is apparent that the summary final judgment was based upon the City's contention that it was not liable for the intentional torts of its police officers, even though these torts might have been committed within the scope of the officer's employment. At the time that the trial judge entered the summary judgment, this Court had not decided the case of Simpson v. City of Miami, Fla.App. 1963, 155 So.2d 829 which holds that a city may be liable for the intentional torts of its police officers. The summary final judgment must be reversed upon authority of that case.
Having determined that this case must be remanded for further proceedings, it is necessary for us to decide the question raised by the granting of the City's motion to strike the claim of punitive damages against it, because we may thus avoid the need for another appeal. See Pace v. King, Fla. 1949, 38 So.2d 823.
There is no contention and nothing in this record to indicate that the facts as alleged and as related in plaintiff's deposition do not come within the purview of those cases where punitive damages are ordinarily allowed in Florida. Therefore, we need not bring the facts forward other than to say that they appear to be sufficient, if proved, to support such a verdict. The issue is one of law: Are punitive damages recoverable from municipal corporations as from private corporations?
It has been determined in Florida that private corporations as well as individuals are subject to punitive damages in a proper case. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 221. It should also be noted that punitive damages are not recoverable as a matter of right, even in a case where proper, but are awarded in the discretion of the trier of fact. Florida East Coast Ry. Co. v. McRoberts, 111 Fla. 278, 149 So. 631, 632; 94 A.L.R. 376.
It is basic to our inquiry that we should first determine whether the question we propose to answer has been decided in this State. In 1940 the Supreme Court of Florida, *59 in City of Miami v. McCorkle, 145 Fla. 109, 199 So. 575, 577, held:
"* * * that when the officers or employees of a municipality in disregard of the rights of the public so negligently and carelessly operate automotive driven fire-fighting apparatus on the public streets as to endanger persons traveling upon the streets and do thereby injure persons lawfully traveling upon the streets, that the municipality will be held to the same degree of liability as would an individual committing the same wrong and injury."
At the time of the holding, the law of this State was that a municipality was immune from liability for the torts of its police officers. See Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193. Therefore, it can be said that the holding in the McCorkle case did not contemplate a holding that a municipality would be held to the same degree of liability for the intentional torts of its police officers, as would an individual. Nevertheless, this holding is persuasive because the same reasoning which supported liability in that case would support liability in this case. We take that reasoning to be that once the barrier of municipal immunity from suit is breached then municipal liability should be governed by the same rule of respondeat superior applicable to any other corporation.
The broadening of the basis for damages against municipal corporations does raise questions of public policy. The reason most often advanced for a holding that municipal corporations are not liable for punitive damages is that to permit such damages against a public corporation is to contravene public policy since the parties who must bear the burden of the punishment are the taxpayers and citizens who constitute the very persons who as a group are to benefit from the public example which the granting of such damages is supposed to make of a wrongdoer.[1] See cases collected in Annotation, 19 A.L.R.2d 903, 910 (1951).
Since the judicial determination of municipal liability for the negligence and intentional torts of its servants was rendered some twenty years after the holding in the McCorkle case, supra, a further examination of the subject is appropriate.
In 1882 the Supreme Court of Florida first took up the question of punitive damages in the case of Smith v. Bagwell, 19 Fla. 117, 121, 45 Am.Rep. 12. The description of the term has often been quoted:
"Compensatory damages are such as arise from actual and indirect pecuniary loss, mental suffering, value of time, actual expenses, and to these may be added bodily pain and suffering. Exemplary, vindictive or punitory damages are such as blend together the interests of society and of the aggrieved individual, and are not only a recompense to the sufferer but a punishment to the offender and an example to the community."
This statement has been followed by many cases which point out that punitive damages are allowed solely as punishment and in the public interest as a deterrent to others inclined to commit a similar offense, but not as compensation to a plaintiff.[2]
*60 In speaking of public policy as related to the specific problem of the wisdom of assessing such damages against a body politic, there is a great distinction between the allowance against a city and the allowance against the officer who is the active tort-feasor. It is clear that the officer may be liable. See Hutchinson v. Lott, Fla.App. 1959, 110 So.2d 442.
The majority view in the United States is that in the absence of statutory authority, there is no right to recover punitive damages against a city. See cases collected in 38 Am.Jur., Municipal Corporations § 663, nn. 14 & 15 (1941); 63 C.J.S. Municipal Corporations § 947 n. 9 (1950); Annotation, 19 A.L.R.2d 903 (1951).
More important than the statistical analysis of majority and minority views is the reasoning involved in determining the correct view. We have mentioned that the penalty to the taxpayers may be regarded as unjust. Other courts have expressed the view that a municipal corporation cannot, as such, do a wilful and malicious wrong. See cases cited in 38 Am.Jur., Municipal Corporations § 663, n. 14 (1941).
The most telling argument against the allowance of such damages against a municipal corporation is, in our view, the fact that it penalizes the public in order to accomplish nothing. Can it be said that those responsible for the conduct of the public business will be either more able or more likely to punish the actual wrongdoers because the verdict is more than is necessary to compensate the injured person?
As an illustration of the argument, we mention the total inapplicability of one factor which goes into the assessment of punitive damages. It is recognized that in order to punish properly by punitive damages the jury may receive evidence of the financial status of the defendant. See Maiborne v. Kuntz, Fla. 1952, 56 So.2d 720. If a verdict of $1,000 against a man with a small amount of property or against a man who earns his living "by the sweat of his brow" may be severe punishment, what shall the verdict be against the body politic with its enormous and well-exercised right to tax us all?
We decry any act of unnecessary, intentional violence on the part of a public officer; but we feel it imperative to hold that punitive damages cannot be assessed against a municipal corporation.
The judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed.
Reversed and remanded.
CARROLL, Judge (dissenting in part).
I concur in the reversal of the summary judgment, on authority of Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193, and Simpson v. City of Miami, Fla.App. 1963, 155 So.2d 829.
I respectfully dissent, however, from the holding in the majority opinion that although municipal corporations are liable under the doctrine of respondeat superior for the torts of their employees (including police officers), punitive or exemplary damages are not recoverable against municipal corporations in such cases.
This question was presented to the Supreme Court of Florida in the case of City of Miami v. McCorkle, (1940) 145 Fla. 109, 199 So. 575, and it was held there that punitive damages were recoverable. In the opinion in that case the Supreme Court listed the questions presented on the appeal, which included one relating to punitive damages as follows:
"`Second Question:
"In addition to compensatory damages for alleged negligence, is a municipality in Florida liable to the assessment of punitive or exemplary damages.'"
That question was answered in the affirmative by the Supreme Court in the McCorkle case, where the Court said (199 So. at 577):
"The second question challenges the propriety of the charge of the court in *61 which the court instructed the jury in effect that it might include in the verdict such sum as might be warranted by the evidence as punitive or exemplary damages. While we have never heretofore been called upon to determine in terms whether or not a municipality in a case of this sort is liable for punitive or exemplary damages, the rationale of our opinions in the cases of Kaufman v. City of Tallahassee, [84 Fla. 634, 94 So. 697, 30 A.L.R. 471;] Maxwell v. City of Miami, [87 Fla. 107, 100 So. 147, 33 A.L.R. 682] and City of Tallahassee v. Kaufman, [87 Fla. 119, 100 So. 150,] citations of which will appear hereinafter, leads us to the conclusion that when the officers or employees of a municipality in disregard of the rights of the public so negligently and carelessly operate automotive driven fire-fighting apparatus on the public streets as to endanger persons traveling upon the streets and do thereby injure persons lawfully traveling upon the streets, that the municipality will be held to the same degree of liability as would an individual committing the same wrong and injury."
If, as held in the Hargrove case, municipal corporations are liable under the doctrine of respondeat superior for damages proximately resulting from torts of their police officers acting in the scope of employment, their liability should not be any less or different than that of a business corporation under like circumstances. I can not agree to the proposition that punitive or exemplary damages against a municipal corporation, where proper basis for them exists, would not tend to better training and control of the corporation's servants, as concededly would be the case with a business corporation.
The majority opinion in the instant case offers a number of reasons for submitting a holding on the above quoted question contrary to that previously given by the Supreme Court. First, it is said that the ruling in McCorkle relating to liability of municipal corporations for punitive damages could not have been made with reference to torts of police officers because at the time McCorkle was decided municipal corporations were immune from liability for such torts. The argument is then made that while the holding of the Supreme Court in the McCorkle case may be persuasive it need not be regarded as authoritative in considering whether punitive damages are recoverable against municipal corporations in cases involving torts of police officers. However, it would appear to me that the subsequent removal of immunity from liability for torts of employees of the city other than the class of employees who were involved in the tort dealt with in the McCorkle case, should operate to bring those cases involving torts of the added employees within the rule of damages as pronounced in McCorkle, rather than that a different rule of liability and damages should apply to torts by them. What legal distinction exists which would sanction punitive damages against a municipal corporation, when called for, for a tort of its employed driver, but prohibit such damages for a tort of an employed policeman?
Secondly, the majority opinion takes the position that public policy is against the imposition of punitive damages upon municipal corporations, because the impact of such damages would carry through to the taxpayers and the citizens. Referring to that argument for immunity of a municipal corporation from damages, the Supreme Court, in Hargrove v. Town of Cocoa Beach, supra (96 So.2d at 132, 60 A.L.R.2d 1193) said:
"The immunity theory has been further supported with the idea that it is better for an individual to suffer a grievous wrong than to impose liability on the people vicariously through their government. If there is anything more than a sham to our constitutional guarantee that the courts shall always be open to redress wrongs and to our sense of justice that there shall be a remedy for every wrong committed, *62 then certainly this basis for the rule cannot be supported."
While that statement of the Supreme Court was not made vis-a-vis punitive damages but with reference to money damages generally, what was said there would appear to apply with equal force to punitive damages.
Thirdly, the majority opinion asserts that because of the lapse of time between the Supreme Court's approval of punitive damages against municipal corporations for tortious acts of its servants (McCorkle case, 1940) and the removal of immunity of municipal corporations from liability for torts of police officers (Hargrove case, 1957), it is appropriate to re-examine the question. I can not agree. A pronouncement of law by the Supreme Court of Florida does not, like a patent under United States laws, lapse with the passage of 17 years.
Fourth, the majority opinion says punitive damages against a municipal corporation are inappropriate because of the difficulty a jury would have in determining a basis upon which to gauge the amount, and refers to the practice of considering the financial status of the defendant against whom such damages are sought. This suggests that because of the size and wealth of municipal corporations resulting verdicts for punitive damages would be outsize. That argument, if adopted, would apply to punitive damages against municipal corporations in all cases of torts by employees, including drivers of fire trucks as to which it would overrule City of Miami v. McCorkle, supra. The practical difficulty suggested could be obviated or controlled by application of the rule that punitive or exemplary damages should bear reasonable relation to the amount of compensatory damages, and through reduction of excessive allowances by appropriate action of the trial court or the reviewing court.
With due respect to the views of my colleagues as expressed in the majority opinion, I am impelled to dissent to this extent because I regard the punitive damage question as one which previously has been decided by the Supreme Court of Florida and not open to re-examination and redetermination by a district court of appeal.
NOTES
[1] "The money in the treasury is derived from the pockets of taxpayers who have comparatively little to say about the actual management of the corporation's business. It is not likely that the political employee will be punished when the power of punishing him is in the hands of his political patron, because of the outcome of a damage suit against the city. Assessment of punitive damages against a city would probably impoverish the public treasury without serving the admonitory function." Morris, Punitive Damages in Tort Cases, 44 Harv.L.Rev. 1173, 1204 (1931).
[2] Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 223; Ross v. Gore, Fla. 1950, 48 So.2d 412, 414; Miami Beach Lerner Shops, Inc., v. Walco Mfg. of Fla., Inc., Fla.App. 1958, 106 So.2d 233, 236.